IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DANIELLE LYN ANTONELLI, | |
| Plaintiff, | |
| v. | Civil No. 19-16962 (RBK/AMD) |
| | **OPINION** |
| GLOUCESTER COUNTY HOUSING AUTHORITY, et al. | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiff Danielle Lyn Antonelli's *in forma pauperis* ("IFP") Complaint (Doc. No. 1 ("Compl.")). Plaintiff alleges that Defendants Gloucester County Housing Authority ("GCHA"), Jessica Laine, Morgan Cox, and Walter Norris have violated a host of her federal rights by first downgrading and then terminating her housing subsidy voucher. For the reasons set forth below, Plaintiff's Complaint is **DISMISSED IN PART**.

**I.   BACKGROUND**

   **A.   Factual Background**

Plaintiff's handwritten Complaint is occasionally vague and hard to parse, but the Court has done its best to piece together Plaintiff's allegations. Plaintiff alleges that she has a disability and is the parent of three children. Compl. at 3–4. At some point in the past, she resided in a three-bedroom handicap unit with her children. Compl. at 3. However, at a subsequent point, Plaintiff applied for a Section 8 housing choice voucher from the GCHA, which she wished to use to obtain

1

a new three-bedroom unit. *Id*. Plaintiff entered into a housing contract for year in a unit in Glassboro, after which she could move elsewhere. *Id*.

Later, Plaintiff's Section 8 voucher was downgraded, and as a result she was unable to obtain a unit with a bedroom for her son. *Id*. She applied to the GCHA for a hearing to protest the downgrading of her voucher and submitted documents to substantiate her claim for a three-bedroom apartment. *Id*. It is unclear if GCHA held the requested hearing, but Plaintiff alleges that GCHA then used "threat, duress, and coercion" to make her sign a repayment agreement for having her child. *Id*. Plaintiff then remained in the Glassboro unit for a year. *Id*.

Plaintiff alleges that she is a victim of domestic violence, and it seems that this abuse has been going on for an extended period of time. Compl. at 4. Following an incident of domestic violence, Plaintiff applied to the GHCA for an emergency transfer and relocation to a new unit. Compl. at 3. However, GHCA failed to accommodate that transfer. *Id*. Indeed, Plaintiff alleges that on June 26, 2019, she received a letter from the GHCA terminating her Section 8 benefits due to these domestic violence incidents. *Id*. On July 30, 2019, Plaintiff applied for a hearing from GHCA.[1] *Id*. Further, Plaintiff alleges that Defendants Jessica Lane, Morgan Cox, and Walter Norris are employees of the GHCA and played an active role in this series of events. *Id*.

Due to the termination of her Section 8 voucher, Plaintiff and her children are now homeless. *Id*. Plaintiff alleges that due to Defendants' actions she is currently suffering from post-traumatic stress disorder and other forms of emotional distress. *Id*. As such, she is seeking compensatory and punitive damages. *Id*.

---

[1] The Complaint is unclear as to what happened after Plaintiff requested this hearing. Plaintiff does allege that she was denied a fair hearing but does not specify if she is referencing the hearing she requested in July 2019 or the hearing she previously requested after the downgrading of her Section 8 voucher.

Plaintiff filed her Complaint and Application to Proceed IFP on August 20, 2019. *Id*. The Court granted her Application to Proceed IFP on August 22, 2019, and authorized service of the Complaint. Doc. No. 2. The Court now completes its screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).

### B. The Housing Choice Voucher Program

Plaintiff's Complaint focuses on adverse actions taken by GCHA in relation to Plaintiff's Section 8 housing choice voucher. Compl. at 3. Although there are many different programs colloquially referred to as "Section 8," Plaintiff's reference to a "housing choice voucher" leads the Court to conclude that she is a participant in the Housing Choice Voucher Program ("HCVP"), set forth at 42 U.S.C. § 1437f(*o*). Under the HCVP, the Federal Department of Housing and Urban Development ("HUD") provides local public housing agencies ("PHAs") with federal funds, which the local agencies then use to subsidize rents for low-income tenants residing in privately owned units. 42 U.S.C. § 1437(*o*). Importantly, the onus is on the program participant to find a unit, rather than on the PHAs. *See* 24 C.F.R. § 982.302(a) ("When a family is selected, or when a participant family wants to move to another unit, the PHA issues a voucher to the family. The family may search for a unit."); *Louis v. NYC Housing Auth.*, 152 F. Supp. 3d 143, 153 (S.D.N.Y. 2016) ("[T]he benefits of the Section 8 program . . . do not include the provision of housing."); *Liberty Resources, Inc. v. Phila. Housing Auth.*, 528 F. Supp. 553, 568 (E.D. Pa. 2007) ("HCVP does not offer participants a place to live as a benefit. HCVP is not responsible for locating participant housing." (footnote omitted)).

## II. LEGAL STANDARD

District courts must review IFP complaints and *sua sponte* dismiss any action or appeal that "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "Whether a complaint should be dismissed under § 1915 because it fails to state a claim is assessed under the same standard as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)." *Rhodes v. Maryland Judiciary*, 546 F. App'x 91, 93 (3d Cir. 2013).

When evaluating a 12(b)(6) motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the non-moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002). While "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

As Plaintiff is proceeding *pro se*, the Court is mindful of its "duty to construe [the] pleadings liberally and apply the applicable law, irrespective of whether [plaintiff has] mentioned it by name." *Rose v. Ortiz*, No. 14-1738 (CCC), 2015 WL 9216589, at *1 (D.N.J. Dec. 16, 2015) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)).

### III. JURISDICTION

Plaintiff brings suit under a wide variety of federal laws, including: (1) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; (3) the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. § 3601 *et seq.*; (3) Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.*; (4) the Health Insurance Portability and Accountability Act ("HIPAA"); (4) 41 U.S.C § 6503; and (6) 18 U.S.C. § 1341. As such, the Complaint successfully invokes federal question jurisdiction under 28 U.S.C. § 1331.

## IV. DISCUSSION

Plaintiff's Complaint is brief, but dense. Plaintiff appears to reference three distinct events as providing a basis for relief: (1) the initial downgrading of Plaintiff's HCVP voucher that meant that she was unable to secure a unit with a bedroom for her son; (2) the GCHA's failure to relocate her in response to the domestic violence committed against her; and (3) the termination of her HCVP voucher in June 2019 that resulted in her present homelessness. The Court begins by analyzing these events under Plaintiff's causes of action rooted in disability discrimination, namely the Rehabilitation Act, the ADA, and FHA. Next the Court turns to Plaintiff's claims of sex discrimination under the FHA. After addressing these claims, the Court addresses Plaintiff's claim of racial discrimination under Title VI. Finally, the Court discusses Plaintiff's remaining assorted claims.

### A. Rehabilitation Act and ADA

Section 504 of the Rehabilitation Act provides that an individual with disabilities "shall [not], solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA extends these protections to all state

and local government activities, providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Due to their similar language and purpose, courts generally interpret and apply these statutes in lockstep. *See Yeskey v. Commonwealth of Pa. Dep't of Corr.*, 118 F.3d 168, 170 (3d Cir. 1997) (noting that "Congress has *directed* that Title II of the ADA be interpreted in a manner with Section 504 [of the Rehabilitation Act]").

In order to prevail on either her Rehabilitation Act or her ADA claim, Plaintiff must show that: (1) she has a disability; (2) was otherwise qualified to participate in a government program; and (3) "was denied the benefits of the program or was otherwise subject to discrimination because of her disability." *Chambers ex rel. Chambers v. Sch. Dist. Of Phila. Bd. Of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (citing *Nathanson v. Med. Coll. Of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)). If a plaintiff cannot make out this prima facie case of discrimination, her claim fails. *See Liberty Resources, Inc.*, 528 F. Supp. At 565 (analyzing claims of discrimination on the basis of disability under Rehabilitation Act and ADA).

Further, because Plaintiff is only seeking damages as relief, she must show that Defendants intentionally discriminated against her on the basis of her disability. *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013) (finding that plaintiffs seeking compensatory damages under the Rehabilitation Act or the ADA must allege intentional discrimination). In the Third Circuit, plaintiffs may succeed on intentional discrimination claims if they demonstrate that the defendants acted with deliberate indifference, meaning "both (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id*. at

263 (internal quotation omitted). Further, "deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *Id*. (internal quotation omitted).

Plaintiff's claims under the Rehabilitation Act and the ADA fail because Plaintiff does not sufficiently connect the dots between her alleged harm and her disability. In the first part of her Complaint, Plaintiff alleges that her HCVP voucher was downgraded, preventing her from obtaining a unit with a bedroom for her son. While it is easy to see how such a situation may have been difficult for any HCVP participant, the Complaint does not contain any allegations as to why this situation was difficult for Plaintiff in particular due to her disability. *Cf. Huynh v. Sanchez*, No. 5:14-cv-02367 LHK, 2014 WL 4364846, at*10 (N.D. Cal. Sept. 2, 2014) (denying motion to dismiss Rehabilitation Act claim where plaintiff alleged that PHA's denial of request to upgrade two-bedroom voucher forced plaintiff's family to "either give up the right to sleep with two or fewer people in a bedroom or lose access to the living room as a common space" and that if plaintiff "did not have a disability the family would not be forced to choose between these two options"). Without any such allegations, the Complaint does no more than state that Plaintiff was a member of a protected class who suffered an adverse action from Defendants, which is simply not enough to support a Rehabilitation Act or ADA claim. *See Kelly v. Drexel Univ.*, 94 F.3d, 102, 109 (3d Cir. 1996) (finding that plaintiffs cannot "establish a *prima facie* discrimination case merely by demonstrating some adverse action against the individual and that the employer was aware that the employee's characteristic placed him or her in the [protected] group"); *see also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1268 (D.C. Cir. 2008) (noting that the Rehabilitation Act is not a vehicle for "a challenge to the scope of a non-discriminatory program").

Further, to the extent that Plaintiff is attempting to assert that Defendants should have provided more assistance to her in her search for a suitable unit, her claims also fail. To comply

7

with the Rehabilitation and the ADA, PHAs must ensure that qualified persons with disabilities "be provided with meaningful access" to the HCVP. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Courts that have considered the issue have consistently found that this mandate does not require PHAs to offer "individualized housing search assistance" to HCVP participants with disabilities. *Liberty Resources, Inc.*, at 569; *see also Louis*, 152 F. Supp. 3d at 153 (dismissing Title II claim "based on allegations that [a PHA] failed to assist [plaintiffs] in obtaining housing in a meaningful way and merely provided them with Section 8 vouchers"); *Taylor v. Housing Auth. of New Haven*, 267 F.R.D. 36, 57 (D. Conn. 2010) (finding that the benefit of the HCVP "does not include help finding housing, the provision of housing, or a guarantee that a participant will find suitable housing"), *aff'd sub nom. Taylor ex rel. Wazyluk v. Housing Auth. of City of New Haven*, 645 F.3d 152 (2d Cir. 2011).

The *Louis* court did entertain the notion that HUD regulations could require PHAs to provide "certain forms of assistance in locating accessible housing to have an equal opportunity to utilize their vouchers." 152 F. Supp. 3d at 154 (citing 24 C.F.R. § 8.28 and 24 C.F.R. § 100.204).[2]

---

[2] Plaintiff also attempts to directly challenge Defendants' conduct as a violation of some of these regulations, in particular 24 C.F.R. §§ 100.201–05. Section 100.201 provides definitions; Section 100.201a incorporates certain standards by reference; Section 100.202 provides general prohibitions against discrimination in the sale or rental of dwellings to any person due to disability; Section 100.203 requires that people with disabilities be allowed to make reasonable modifications to their dwellings, at their own expense; Section 100.204 requires PHAs to make reasonable accommodations to allow individuals with disabilities "equal opportunity to use and enjoy a dwelling unit;" and Section 100.205 mandates that certain multifamily dwellings have at least one accessible entrance.

Only Sections 100.202 and 100.204 seem even possibly relevant based on the facts that Plaintiff has alleged. The Second Circuit has directly held that Section 100.204 does not create enforceable private rights. *Taylor ex rel. Wayzyluk*, 152 F.3d at 153–54. Third Circuit precedent indicates that it would find that neither Section 100.202 or Section 100.204 create any privately enforceable rights. *See Three Rivers Ctr. for Indep. Living v. Housing Auth. of City of Pittsburgh*, 283 F.3d 412, 429–31 (3d Cir. 2004) (concluding that HUD regulations implementing Section 504 of the Rehabilitation Act do not create privately enforceable rights). However, even if these

Although the court held the door open to such a claim, it nevertheless dismissed the plaintiffs' complaint because they failed to allege that they had any concrete issues in locating suitable housing due to their disabilities. *Id.* at 155. Similarly, Plaintiff does not allege that she had any difficulty in finding adequate housing due to her disability. As such, these claims are dismissed, without prejudice.

Plaintiff's Complaint also discusses the GCHA's failure to relocate her family in the wake of domestic violence and the GHCA's termination of her voucher. As stated above, Plaintiff does not sufficiently allege that these actions harmed her on the basis of her disability to state a claim under the Rehabilitation Act and the ADA. Although Plaintiff asserts that these actions denied her a reasonable accommodation in violation of the ADA, she does not specify what that reasonable accommodation would be. As such, she has at best merely recited the formal elements of an ADA claim, which is inadequate under Federal Rule of Civil Procedure 8(a). *See McNeil v. United States*, 508 U.S. 106, 113 (1993) (holding that *pro se* litigants are "not excused from conforming to the standard rules of civil procedure"). Therefore, all of Plaintiff's Rehabilitation Act and ADA claims are dismissed, without prejudice.

### B. FHA—Disability Discrimination and Sex Discrimination

Plaintiff alleges that Defendants violated the FHA by discriminating against her both on the basis of her disability and on the basis of her sex. The Court finds that her disability discrimination theory is unavailing, but that it would not be appropriate to dismiss her sex discrimination claim at this time.

---

regulations did create privately enforceable rights, Plaintiff's claims would still fail for the same reason her Rehabilitation Act and ADA claims fail: she has not adequately alleged discrimination on the basis of her disability. As such, these claims must be dismissed, without prejudice.

*1. Disability Discrimination*

Under the FHA, it is illegal "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." 42 U.S.C. § 3604(f)(2). One Third Circuit precedent suggests that a PHA cannot be sued under the FHA for its role in administering the HCVP. *See Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1283 (3d Cir. 1993) (noting that "[n]othing in the text or legislative history of §3604(f)(1) suggests to us that Congress intended to regulate . . . the decision-making of public agencies which sponsor housing for the handicapped"). However, *Growth Horizons* only addressed Section 3604(f)(1), concerning the sale or rental of a dwelling, while this case involves Section 3604(f)(2), concerning the "terms, conditions, or privileges of sale or rental of any dwelling." As such, *Growth Horizons* does not control. *See Huynh*, 2014 WL 4364846, at *5 (finding no reason "why administration of housing vouchers cannot qualify as 'provision of services . . . in connection with" a dwelling. Further, PHAs administering the HCVP are required to comply with the FHA under HUD regulations. *See* 24 C.F.R. § 982.53(a). As such, the Court will not dismiss Plaintiff's FHA claims merely because Defendants are only involved in the administration of her HCVP voucher.

Similar to the Rehabilitation Act and the ADA, plaintiffs pursuing remedies under the FHA for disability discrimination may bring: (1) intentional discrimination claims; (2) disparate impact claims; or (3) reasonable accommodation claims. *Comm. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).[3] An intentional discrimination claim requires an allegation that "some discriminatory purpose was a motivating factor behind the challenged action." *Id*. at 177

---

[3] Plaintiff's complaint does not suggest that she seeks to bring a disparate impact claim because she "alleges facts specific only to her situation." *Spieth v. Bucks Cty. Housing Auth.*, 594 F. Supp. 2d 584, 593 (E.D. Pa. 2009) (dismissing FHA claims).

10

(internal quotation omitted). Alternatively, a reasonable accommodation claim requires the plaintiff to "establish a nexus between the accommodations that he or she is requesting and their necessity for providing handicapped individuals an 'equal opportunity' to use and enjoy housing." *Lapid-Laurel, L.L.C. v. Zoning Bd. Of Adjustment of Twp. Of Scotch Plains*, 284 F.3d 442, 459 (3d Cir. 2002).

As such, Plaintiff's FHA claim fails for the same reasons that her Rehabilitation Act and ADA claims fail. Plaintiff has not alleged that the GHCA was motivated to act against her because of her disability, or that Defendants' actions had a discriminatory impact. Further, Plaintiff has not identified a reasonable accommodation she requested from Defendants that would be necessary for her to enjoy her residence due to her disability. Her request for a three-bedroom voucher was not to accommodate her disability, but to provide a bedroom for her son. Similarly, her request for relocation was allegedly necessary due to domestic violence incidents against her, not due to her disability. As such, Plaintiff's FHA claim is dismissed without prejudice.

2. *Sex Discrimination*

Although Plaintiff does not directly make a sex discrimination claim, the Court construes Plaintiff's claims under the Violence Against Women Act ("VAWA") as being claims for intentional sex discrimination under the FHA. The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . sex." 42 U.S.C. § 3604(b). As mentioned above, an intentional discrimination claim under the FHA requires the plaintiff to establish that the defendant acted with a discriminatory purpose. The plaintiff need not show "malicious or invidious" intent, but only that "a protected characteristic played a role in the

defendant's decision to treat her differently." *Wind Gap*, 421 F.3d at 177 (internal quotation omitted).

VAWA partially amended 42 U.S.C. § 1437f(*o*) to provide additional protections for victims of domestic violence. In particular, PHAs may not deny HCVP assistance due that fact the participant "is or has been a victim of domestic violence, dating violence, or stalking." 42 U.S.C. § 1437f(*o*)(6)(B). Further, although PHAs generally may not issue vouchers to participants to move to another jurisdiction if they moved out of their unit in violation of their lease,

> a family may receive a voucher from a public housing agency and move to another jurisdiction . . . if the family . . . has moved out of the assisted dwelling unit in order to protect the health and safety of an individual who is or has been the victim of domestic violence, dating violence, or stalking who reasonably believed he or she was imminently threatened by harm from further violence if he or she remained in the assisted dwelling unit.

42 U.S.C. § 1437f(r)(5).

HUD has further implemented VAWA's protections by regulation. In pertinent part, this regulation provides that PHAs may not terminate participants from the HCVP as a result of being the victim of domestic violence. 24 C.F.R. § 5.2005(b)(1). Additionally, PHAs are required to adopt emergency transfer plans to allow HCVP participants to switch units and continue to receive rental assistance if the participant "reasonably believes there is a threat of imminent harm from further violence if the tenant remains within the same dwelling unit." 24 C.F.R. § 5.2005(e); 24 C.F.R. § 982.53 ("[T]he PHA is the covered housing provider responsible for complying with the emergency transfer plan provisions at 24 C.F.R. § 5.2005(e)."). Finally, HUD regulations specifically state that participants "may move to a new unit with continued tenant-based assistance: . . . [when the participant] is or has been the victim of domestic violence . . . and the move is needed to protect the health or safety of the family or family member." 24 C.R.F. § 982.354.

The Court understands Plaintiff's Complaint to allege that Plaintiff attempted to relocate her family after Plaintiff suffered domestic violence, that Defendants did not assist with this transfer, and that subsequently Defendants terminated Plaintiff's HCVP voucher due to her suffering domestic violence. Consequently, Plaintiff adequately alleges that Defendants violated 42 U.S.C. § 1437f(*o*)(6)(B) and 24 C.R.F. § 982.354.

This Court is not aware of any cases establishing that Section 1437f(*o*)(6)(B) or 24 C.F.R. § 982.54 give rise to any privately enforceable rights. In fact, Third Circuit precedent suggests the opposite. *Chavis v. Bush*, 305 F. App'x 11, 12 (3d Cir. 2008) (finding that Section 1437f "does not provide for a private right of action except for recovery of rent and utility allowances"); *see also Louis*, 152 F. Supp. 3d at 157 n.12 (finding that 24 C.F.R. § 982.54 does not give rise to any enforceable rights).[4]

However, several courts have found that a failure to comply with VAWA can permit an inference that a defendant acted with the intent to discriminate on the basis of sex in violation of the FHA. *See Dickinson v. Zanesville Metro. Housing Auth.*, 975 F. Supp. 2d 863, 872 (S.D. Ohio 2013) (finding allegations that Defendant did not investigate plaintiff's complaints of domestic violence, in violation of VAWA, were sufficient to allow sex discrimination claim to proceed on motion to dismiss); *Meister v. Kansas City*, No. 09-2544-EFM, 2011 WL 765887, at *6 (D. Kan. Feb. 25, 2011) (denying summary judgment on FHA claim against PHA for termination of HCVP benefits because "evidence that defendant knew that domestic violence caused damage to plaintiff's housing unit would help support a claim that she was evicted under circumstances giving rise to an inference of sex discrimination"); *see also Wilson v. Guardian Mgmt., LLC*, 383 F. Supp.

---

[4] The Court does not decide that VAWA does not confer privately enforceable rights. Rather, given that Plaintiff's claims survive Section 1915(e)(2) screening regardless of whether there are privately enforceable rights under VAWA, the Court finds it unnecessary to decide this issue.

3d 1105, 1110 (D. Or. 2019) (finding that "summary judgment against [p]laintiff's housing discrimination claims is not warranted simply because those claims are based on her status as a domestic violence victim"); *Bouley v. Young-Sabourin*, 394 F. Supp. 2d 675, 678 (D. Vt. 2005) (finding that allegation landlord attempted to evict plaintiff seventy two hours after domestic violence incident was sufficient to make out a prima facie case of sex discrimination). An earlier case in the District of New Jersey dismissed the FHA claims of a domestic violence victim because it concluded that "being a domestic violence victim on public assistance is not a protected class under FHA." *Delgado v. Morris Cty. Housing Auth.*, No. 18-15092 (ES) (MAH), 2018 WL 5962478, at *5 (D.N.J. Nov. 13, 2018). But this opinion did not consider whether evidence that the defendant was aware the plaintiff was a victim of domestic violence could give rise to an inference of sex discrimination, and as such, this Court does not find *Delgado* persuasive.

Given that Plaintiff has alleged that Defendants violated her VAWA rights, the Court's obligation to construe Plaintiff's claims liberally, and the procedural posture of this case on a Section 1915(e)(2) screening, the Court concludes that it would be inappropriate to dismiss Plaintiff's claims of intentional sex discrimination in violation of the FHA at this time.

**C. Title VI**

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Plaintiff's Complaint invokes Title VI as a cause of action, but does not indicate what precise theory of recovery she is pursuing. However, because Plaintiff is requesting compensatory damages, the Court will assume that she is pursuing a theory of intentional discrimination. *See*

*S.H. ex rel. Durrell*, 729 F.3d at 261 (explaining that compensatory damages are only available under Title VI where plaintiffs show intentional discrimination).

To prevail on a Title VI claim, the plaintiff must show "(1) that there is racial or national origin discrimination; and (2) the entity engaging in the discrimination is receiving federal financial assistance." *Barker v. Our Lady of Mount Carmel Sch.*, No. 12-4308 (MCA), 2016 WL 4571388, at *10 (D.N.J. Sept. 1, 2016) (internal quotation omitted). In this case, Plaintiff has not in any way alleged that there was racial or national origin discrimination. Plaintiff has not pled her own race, color, or national origin, and nothing in the complaint suggests that any of Defendants' actions were motivated by Plaintiff's race, color, or national origin. As such, this claim must be dismissed without prejudice.

### D. FHIPAA, 41 U.S.C. § 6503, and 18 U.S.C. § 1341

Plaintiff identifies HIPAA as a cause of action, but "there is no federal private right of action under HIPAA." *Vines v. Columbus House*, No. 13-3923 (FLW), 2017 WL 2539409, at *12 n.11 (D.N.J. June 12, 2017) (internal quotation omitted); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010). When *pro se* litigants allege HIPAA violations, courts sometimes construe their claims as being for violations of the Fourteenth Amendment right to privacy. *See Vines*, 2017 WL 2539409, at *12–13 (treating alleged HIPAA violation as violation of "Fourteenth Amendment right to privacy in medical information"). However, Plaintiff's Complaint does not allege Defendants mishandled her medical information, and therefore does not appear to implicate this right. Consequently, this claim is dismissed without prejudice.

Plaintiff also pleads 41 U.S.C. § 6503 as a cause of action. Section 6503 applies in cases of a breach of "contract made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000." 41 U.S.C. § 6502.

Further, Section 6503 mainly provides for damages owed to the federal government in the event a contractor breaches a contract with a federal agency. As such, this statute is wholly inapplicable to Plaintiff, and this claim is dismissed with prejudice.

Finally, Plaintiff alleges violations of the federal mail fraud statute, 18 U.S.C. §1341. However, the mail fraud statute does not provide a private right of action. *Robinson v. Section 23, Property Owner's Ass'n, Inc.*, No. 19-1081, 2019 WL 4673954, at *3 (3d Cir. 2019) ("We agree with the Fifth and Sixth Circuits and hold that Congress did not intend to create a private right of action in enacting either the mail or wire fraud statutes." (quoting *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408 (8th Cir. 1999)). As such, this claim is dismissed with prejudice.[5]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint is **DISMISSED IN PART** pursuant to 28 U.S.C. § 1915(e)(2)(B). An Order follows.

Dated: 10/25/2019
s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

---

[5] Parts of Plaintiff's Complaint assert that Defendants defrauded her when they downgraded her HCVP voucher. Compl. at 3. As such, the Court believes that Plaintiff may be attempting to make out a claim for state law fraud. However, under Federal Rule of Civil Procedure 9(b), plaintiffs must plead claims of fraud with particularity. In New Jersey, the elements of common law fraud are "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate N.J. Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015). At a minimum, Plaintiff has not identified which claim made by Defendants was a material misrepresentation, meaning that she has failed to meet the pleading standard of Rule 9(b). As such, Plaintiff's common law fraud claim is also dismissed without prejudice.